IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NAOMI STAPLES,

        Plaintiff,

v.

JOANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

CV-05-3014 ST

OPINION AND ORDER

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Naomi Staples ("Staples"), brings this action pursuant to the Social Security Act, 42 USC § 405(g), to obtain judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Disability Insurance Benefits and Supplemental Security Income payments. All parties have consented to allow a

Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c). For the reasons set forth below, the decision of the Commissioner is reversed and remanded for calculation and award of benefits.

## PROCEDURAL BACKGROUND

Staples initially filed an application for benefits on November 12, 2001, alleging disability since August 2, 1997, due to multiple sclerosis ("MS"), nerve illness and fatigue. Her application was denied initially and upon reconsideration. On January 13, 2004, a hearing was held before an Administrative Law Judge ("ALJ"). In a decision dated July 29, 2004, the ALJ found Staples was not entitled to benefits. On February 24, 2005, the Appeals Council denied Staples's request for review, making the ALJ's decision the final decision of the Commissioner. Staples now seeks judicial review of the Commissioner's decision.

## STANDARDS

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert denied*, 517 US 1122 (1996). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F2d 841, 849 (9th Cir 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 USC § 405(g); *see also Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial

evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986). The Commissioner's decision must be upheld, however, if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F3d at 1039-40.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 CFR §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999):

Step One. The Commissioner determines whether claimant is engaged in substantial gainful activity. If so, claimant is not disabled. If claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate claimant's case under step two. 20 CFR §§ 404.1520(b), 416.920(b).

Step Two. The Commissioner determines whether claimant has one or more severe impairments. If not, claimant is not disabled. If claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under step three. 20 CFR §§ 404.1520(c), 416.920(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration (SSA) regulations, 20 CFR Part 404,

Subpart P, Appendix 1. If so, claimant is disabled. If claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of claimant's case proceeds under step four. 20 CFR §§ 404.1520(d), 416.920(d).

<u>Step Four</u>. The Commissioner determines whether claimant is able to perform work he or she has done in the past. If so, claimant is not disabled. If claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of claimant's case proceeds under step five. 20 CFR §§ 404.1520(e), 416.920(e).

<u>Step Five</u>. The Commissioner determines whether claimant is able to do any other work. If not, claimant is disabled. If the Commissioner finds claimant is able to do other work, the Commissioner must show a significant number of jobs exist in the national economy that claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates a significant number of jobs exist in the national economy that claimant can do, claimant is not disabled. If the Commissioner does not meet this burden, claimant is disabled. 20 CFR §§ 404.1520(f)(1), 416.920(f)(1).

At steps one through four, the burden of proof is on the claimant. *Tackett*, 180 F3d at 1098. At step five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. *Id*.

## **ALJ's DECISION**

At step one, the ALJ found Staples had not engaged in substantial gainful activity since the alleged onset of her disability on August 2, 1997.

At step two, the ALJ found Staples had the medically determinable severe impairments of MS, migraine headaches, and borderline personality disorder.

At step three, the ALJ found that Staples's impairments did not meet or medically equal the criteria of any listed impairments.

At step four, the ALJ found that Staples was not fully credible and was unable to return to her past relevant work. The ALJ found that Staples retained the residual functional capacity to perform a wide range of sedentary work, with non-exertional limitations to no complex tasks, jobs requiring balance, or exposure to hazardous heights or machinery.

Because Staples is a younger individual (age 24 as of her alleged onset date), and has a general education diploma, an associate degree, and transferable customer service skills, the ALJ found at step five that Staples can work at such jobs as a call-out operator, surveillance systems monitor, and telephone answering clerk. As a result, he found Staples not disabled within the meaning of the Act.

## DISCUSSION

Staples contends that the ALJ erred by: (1) rejecting the opinion of her treating physician; (2) finding her less than fully credible; (3) failing to consider the combined effect of her impairments; and (5) posing an inadequate hypothetical question to the VE. Because the first assertion is dispositive, the court need not address the other alleged errors.

## I. Opinion of the Treating Physician

Yung K. Kho, M.D., a neurologist certified as a Diplomate by the American Board of Psychiatry and Neurology, began treating Staples in August 2001. He noted "decreased sensation

to pinprick on the left side" of her body and "generalized decreased" reflexes. Tr. 454.[1] Dr. Kho diagnosed "[l]ikely multiple sclerosis, relapsing and remitting as documented by history and MRI," "[l]ikely associated panic attacks, depression, anxiety," and "[c]erebral muscle tension headaches with possibly mixed headache syndrome with underlying paroxysmal common migraines." *Id*.

On February 4, 2002, Dr. Kho responded to an inquiry about Staples from the Oregon Department of Human Resources as follows:

> Naomi is a 28 year old Caucasian female with known multiple sclerosis. She has multiple sclerosis lesions on her MRI. Neurologically she is actually doing quite well without major disability except for the likely multiple sclerosis related depression, panic attacks, anxiety, muscle tension headaches. She is on Copaxone, does not tolerate this very well.
>
> From a neurological standpoint I feel that Naomi is not able to return to the work force.

Tr. 448.

On April 29, 2002, Dr. Kho responded to another inquiry from the State of Oregon as follows:

> Her diagnosis is relapsing and remitting multiple sclerosis, over shadowed by depression and anxiety.
>
> As you know psychological factors play a significant role in the disease of multiple sclerosis. This particular claimant is unable to do work related activities. She has no endurance in regard to sustained concentration, social interaction and adaptability. The claimant is essentially unable to enter the work force. Her EDSS[2]

---

[1] Citations are to the page(s) indicated in the official transcript of the record filed with the Commissioner's Answer.

[2] The Kurtzke Expanded Disability Scale ("EDSS") is a method of quantifying disability in multiple sclerosis. The EDSS quantifies disability in eight Functional Systems ("FS") and allows neurologists to assign a Functional System Score ("FSS") in each of these. The Functional Systems are pyramidal, cerebellar, brainstem, sensory, bowel and bladder, visual,

>   scale is 3 with moderate disability. MRI was obtained on 4/19/02
>   showing the periventricular white matter plaques compatible with
>   M.S.

Tr. 446.

On September 17, 2002, Dr. Kho responded in a similar manner to a third inquiry from the State of Oregon:

>   This 28 year old claimant has been seen in this office for history
>   of multiple sclerosis, anxiety disorder, frozen shoulder left. She
>   has associated panic attacks, depression, anxiety, and is on Copaxone.
>   She has some local skin reactions from the injections. Her EDSS[3]
>   scale is 3.0, meaning she has mild disability regarding her multiple
>   sclerosis.
>
>   With her multiple sclerosis and multiple other psychological
>   complaints, it is felt that this worker is unable to return to the
>   work force. See accompanying notes. Psychological evaluation
>   is strongly recommended.

Tr. 442.

On October 28, 2002, Dr. Kho responded as follows to yet a fourth inquiry from the State of Oregon:

>   Naomi is a 28 year old Caucasian female with relapsing and remitting
>   multiple sclerosis, depression, anxiety, chronic fatigue which as you
>   know is very common in multiple sclerosis. She is on multiple
>   medications including Copaxone. She has clinically definite multiple
>   sclerosis (CDMS). The patient is unable to return to the work force.

Tr. 440.

On July 29, 2003, Dr. Kho endorsed the following statement prepared by counsel:

---

cerebral, and other. EDSS steps 1.0 to 4.5 refer to people with MS who are fully ambulatory. EDSS steps 5.0 to 9.5 are defined by the impairment to ambulation. Step 3.0 is defined as "[m]oderate disability in one FS, or mild disability in three or four FS. Fully ambulatory."

[3] Step 3.5 is defined as "[f]ully ambulatory but with moderate disability in one FS and more than minimal disability in several others."

> It was your opinion that she has multiple sclerosis, a very disabling condition, and you had found her to be disabled from the work force when you wrote your letter on October 28, 2002. You indicated that just because your letter went out on that date for administrative purposes does not mean that she was not disabled prior to that and that certainly her diagnosis preceded that date.
>
> You discussed her MRI scan of May 11, 1999 which demonstrated lesions related to multiple sclerosis, and you acknowledged that she certainly had the disease on or before March 31, 2001 since this is an evolving and progressive disease. You believed that her symptoms were credible and caused by the disease of multiple sclerosis which can result in both physical and psychological symptoms. You indicated that the symptoms of MS wax and wane in a manner that makes it unlikely that Naomi could hold down any regular, sustained kind of work or activities even in a sedentary sense since this illness causes massive fatigue and interferes with clear mental functioning along with all of the other physical symptoms. You indicated that this inability to work status existed at least on or before March 31, 2001.

Tr. 433.

Finally on December 5, 2003, Dr. Kho responded to another inquiry about Staples from the Oregon Department of Human Resources as follows:

> Naomi is a 30 year old Caucasian female with multiple sclerosis, dependent personality disorder, PTSD, anxiety, depression. She was last seen on 9/18/03. It is felt that this patient is not able to return to the work force. Her EDSS scale remains 3.5.

Tr. 581.

The ALJ noted Dr. Kho's repeated opinion that Staples has been unable to work since March 31, 2001, due to MS and other psychological complaints, but rejected it, explaining:

> However, his opinion lacks basic indicia of reliability and cannot be afforded significant weight for several reasons. First, his conclusion that the claimant cannot work requires vocational expertise which clearly exceeds his training and education as a physician. Moreover, such determinations are reserved to the Commissioner by law (Social Security Ruling 96-5p), and medical

> source opinions in this regarding are not entitled to special weight as a result. Second, while controlling weight may be assigned when a treating sources's medical opinion is well supported (20 CFR§ 404.1502), Dr. Kho's opinions lack this foundation. He concludes that the claimant's limitations are primarily psychological (Exhibit 15F/17). However, he is a neurologist and does not practice psychiatry. In fact, there is little, if any, evidence that he ever evaluated the claimant using any generally accepted psychiatric method. Further, his conclusion runs contrary to the State Agency evaluating psychologist, and it runs directly contrary to the claimant's own admission that she was, in fact, working at the time he offered opinion that she was unable to work. Finally, in terms of the physical impact of the claimant's multiple sclerosis, itself, while he reports that this condition alone precludes work (Exhibit 15F/11), he inconsistently stated in the very same report that the claimant had only "mild disability" as a result of this condition.

Tr. 37.

As for her first reason, the ALJ is correct that the opinion of the treating physician is not necessarily conclusive as to either physical condition or the ultimate issue of disability. *Morgan v. Comm'r of Social Sec. Admin.,* 169 F3d 595, 600 (9th Cir 1999). However, that reason does not support rejecting the remainder of Dr. Kho's opinion that Staples suffers from depression, panic attacks, anxiety and muscle tension headaches and has "no endurance in regard to sustained concentration, social interaction and adaptability." Tr. 446.

The ALJ's second reason cannot withstand analysis. She states that Dr. Kho's opinion lacks foundation because he concludes that Staples's limitations "are primarily psychological" and that he "is a neurologist and does not practice psychiatry." Tr. 37. To the contrary, Dr. Kho specifically cites MRI studies showing periventricular white matter plaques indicating MS. Furthermore, even if Dr. Kho is not a mental health specialist, his opinion as to Staples's mental functioning may not be disregarded. *Sprague v. Bowen,* 812 F2d 1226, 1232 (9th Cir 1987). The

Ninth Circuit summarily rejected this same argument by the Commissioner concerning this same physician:

> Finally, the ALJ argues that Dr. Kho's opinion as to Lester's mental functioning may be disregarded because he is not a mental health specialist. This argument directly conflicts with this court's decision in *Sprague,* 812 F.2d at 1232. Like the treating physician in *Sprague,* Dr. Kho provided treatment for the claimant's psychiatric impairment, including the prescription of psychotropic medication. His opinion constitutes "competent psychiatric evidence" and may not be discredited on the ground that he is not a board certified psychiatrist. *Id.*

*Lester v. Chater,* 81 F3d 821, 833 (9th Cir 1995).

Here, Dr. Kho provided treatment for Staples's psychiatric impairment, including the prescription of Clonazepam, an anti-anxiety medication. Tr. 436. Thus, his opinion constitutes competent psychiatric evidence and may not be discredited on the ground that he is not a board certified psychiatrist. "Indeed, the treating physician's opinion as to the combined impact of the claimant's limitations – both physical and mental – is entitled to special weight." *Lester*, 81 F3d at 833.

As a further reason for rejecting Dr. Kho's opinion, the ALJ states that it is contradicted by the State Agency's evaluating psychologist, Michael R. Villanueva, Psy.D. Dr. Villanueva examined Staples on June 24, 2002, and conducted standardized testing including the Wechsler Adult Intelligence Scale, Wechsler Memory Scale, Token Test, Verbal/Semantic Fluency, Wide Range Achievement Test, and Trails A and B. Tr. 278-83. As noted by the Commissioner, Dr. Villanueva found that Staples's recall was within normal limits and that she had adequate endurance during testing, although she was slow to integrate visual and motor activity. However, Dr. Villanueva also found that Staples's working memory "falls into the impaired range," and "language dysfunction is noted," suggesting "executive difficulties, or problems initiating and

sustaining self-directed behavior." Tr. 282. He further Villanueva stated that it "is very difficult to tell whether or not the patient is experiencing acquired neurocognitive difficulties." *Id.* He diagnosed Anxiety Disorder NOS with Panic Attacks and concluded as follows:

> It is difficult to say whether or not the patient is suffering acquired difficulties. If difficulties were acquired, I would expect more problems with memory. On the other hand, she does demonstrate difficulties with tasks that require visual motor integration skill.
>
> What can be said, from this interview, is that the patient's difficulties with anxiety are longstanding. Some of her treatment, which has produced marked somnolence making it difficult for her to care for her children, may be iatrogenic. Further assessment of anxiety, apart from neurologic diagnoses, may be indicated.

*Id.*

Contrary to the ALJ's assertion, nothing in Dr. Villaneuva's report contradicts any of Dr. Kho's conclusions as to Staples's limitations.

The ALJ also rejected Dr. Kho's opinion because "it runs directly contrary to the claimant's own admission that she was, in fact, working at the time he offered opinion that she was unable to work." Tr. 37. Staples testified that she operated a day care center in her home through 2002. Tr. 632-33. She provided care for eight children, including four of her own. Her friends actually ran the operation "a lot of the time" and kept the money. *Id.* This testimony does not contradict Dr. Kho's assertion that Staples lacked endurance for sustained concentration, social interaction and adaptability.

Finally, the ALJ rejected Dr. Kho's opinions as internally inconsistent. However, Dr. Kho is quite clear in his conclusion, stated numerous times, that Staples is unable to sustain work activities because of the combination of neurological and psychological limitations.

If a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Holohan v. Massanari,* 246 F3d 1195, 1202 (9th Cir 2001), citing 20 CFR § 404.1527(d)(2). In general, the opinion of specialists concerning matters relating to their specialty are entitled to more weight than the opinions of nonspecialists. *Holohan*, 246 F3d at 1202, citing 20 CFR § 404.1527(d)(5). An ALJ may reject the uncontradicted medical opinion of a treating physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Id*, citing *Reddick v. Chater,* 157 F3d 715, 725 (9th Cir 1998). If the treating physician's medical opinion is inconsistent with other substantial evidence in the record, treating source medical opinions are still entitled to deference and must be weighted using all the factors provided in 20 CFR § 404.1527. *Id,* citing SSR 96-2p. An ALJ may rely on the medical opinion of a non-treating doctor instead of the contrary opinion of a treating doctor only if she provides "specific and legitimate" reasons supported by substantial evidence in the record. *Id.*

As discussed above, the ALJ's rejection of the opinion of Dr. Kho is not supported either by specific and legitimate reasons or by clear and convincing reasons.

## II. Remand For Payment of Benefits

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F3d 1172, 1178 (9th Cir), *cert denied,* 531 US 1038 (2000). The court's decision turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence

is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F2d 759, 763 (9th Cir 1989).

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman,* 211 F3d at 1178. The court should grant an immediate award of benefits when:

> (l) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.*

The second and third prongs of the test often merge into a single question: whether the ALJ would have to award benefits if the case were remanded for further proceedings. *See id* at 1178 n7.

The ALJ improperly rejected the testimony of Dr. Kho as to Staples's limitations. Because Staples has established that she can no longer preform her past relevant work, this case turns on whether the Commissioner has met her burden at step five of proving that Staples retains the ability to perform other work in the national economy. The VE testified that a person with the described limitations would be unable to sustain employment. Tr. 651-52. If credited, Dr. Kho's testimony, coupled with the testimony of the VE, establishes that Staples cannot work on a regular and sustained full-time basis and, therefore, is disabled. According, the court concludes this matter should not be remanded for further proceedings. *See Schneider v. Comm'r,* 223 F3d 968 (9th Cir 2000); *see also Reddick,* 157 F3d at 729 ("We do not remand this case for further

proceedings because it is clear from the administrative record that Claimant is entitled to benefits.").

For these reasons, the Commissioner's decision is reversed and remanded pursuant to sentence four of 42 USC § 405(g) for the calculation and award of benefits.

Dated this 4th day of January, 2006.

s/ Janice M. Stewart_____
JANICE M. STEWART
United States Magistrate Judge